**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| DARLENE FRICCHIONE,<br><br>                    *Plaintiff,*<br><br>v.<br><br>AIRBUS AMERICAS, INC. and AIRBUS S.A.S.,<br>                    *Defendants.* | Civil Action No. 1:25-cv-00742 |

**DEFENDANT AIRBUS AMERICAS, INC.'S AND AIRBUS S.A.S.'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO
STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

I.     Introduction ................................................................................................................. 1

II.    Relevant Background Facts ......................................................................................... 3

       A.     Plaintiff Alleges Tort Claims Arising From Exposure to Aircraft Cabin
              Fumes ................................................................................................................. 3

       B.     Plaintiff's Jurisdictional Allegations Do Not Connect Airbus S.A.S. to
              Virginia .............................................................................................................. 4

       C.     Additional Jurisdictional Facts Confirm Airbus S.A.S.'s Lack of Connections
              to Virginia ......................................................................................................... 5

III.   Airbus S.A.S. Is Not Subject To Personal Jurisdiction In Virginia ........................... 8

       A.     Airbus S.A.S. is Not Subject to General Jurisdiction in Virginia ..................... 8

       B.     Airbus S.A.S. is Not Subject to Specific Jurisdiction in Virginia ................... 12

              1.     Airbus S.A.S. did not purposefully direct its activities at Virginia .......... 14

              2.     Plaintiff's claims do not arise from or relate to any contacts Airbus
                     S.A.S. established with Virginia. ............................................................. 15

              3.     The exercise of personal jurisdiction over Airbus S.A.S. would not be
                     reasonable. .............................................................................................. 17

       C.     Plaintiff Cannot Attribute the Forum Contacts of Airbus Americas to Airbus
              S.A.S. ............................................................................................................... 18

IV.    The Complaint Should Be Dismissed in the Alternative for Failure to State a Claim ..... 21

       A.     Plaintiff Fails to Plead Any Claims ................................................................. 21

       B.     Plaintiff Fails to State Negligence Claims Based on Design Defect ................. 22

              1.     The Complaint does not sufficiently allege an unreasonably
                     dangerous product design. ....................................................................... 23

              2.     The Complaint does not sufficiently allege an alternative feasible
                     design. ..................................................................................................... 24

       C.     The Complaint Fails to State a Failure to Warn Claim ..................................... 26

V.     Conclusion ................................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Bayerische Motoren Werke AG*,
  2020 WL 2098108 (D.S.C. May 1, 2020)................................................................20

*Andrews v. Shandong Linglong Tyre Co., Ltd.*,
  656 F. Supp. 3d 583 (E.D. Va. 2023) ...........................................................10, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................7, 10, 26, 27

*Ball v. Takeda Pharms. Am., Inc.*,
  963 F. Supp. 2d 497 (E.D. Va. 2013) ......................................................21, 22, 26

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017)...................................................................................9, 11, 12

*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,
  582 U.S. 255 (2017)....................................................................13, 14, 16, 17

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)....................................................................................14, 18

*Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*,
  334 F.3d 390 (4th Cir. 2003) ..................................................................15

*Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*,
  259 F.3d 209 (4th Cir. 2001) ....................................................................17

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)............................................................................... *passim*

*Dodson v. C.R. Bard, Inc.*,
  2020 WL 7647631 (E.D. Va. Dec. 23, 2020) ........................................23

*Dorman v. State Indus., Inc.*,
  787 S.E.2d 132 (Va. 2016)........................................................................22

*Evans v. Nacco Materials Handling Grp.*,
  810 S.E.2d 462 (Va. 2018).............................................................22, 23, 24

*Farrar v. McFarlane Aviation, Inc.*,
  823 Fed. Appx. 161 (2020) ...............................................................9, 11, 17

*Fidrych v. Marriott Int'l, Inc.*,
   952 F.3d 124 (4th Cir. 2020) ................................................................... *passim*

*Fields v. Jobar Intern., Inc.*,
   2014 WL 1513289 (E.D. Va. April 16, 2014) ...................................24, 26

*Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*,
   592 U.S. 351 (2021).........................................................................8, 9, 16

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).......................................................................8, 11, 21

*Grayson v. Anderson*,
   816 F.3d 262 (4th Cir. 2016) ........................................................................7

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)........................................................................................11

*Herstal, S.A. v. Sirketi*,
   2024 WL 4255343 (E.D. Va. Sept. 20, 2024)............................10, 14, 19

*J. McIntyre Machinery, Ltd. v. Nicastro*,
   564 U.S. 873 (2011)........................................................................................10

*Khashoggi v. NSO Grp. Technologies Ltd.*,
   700 F. Supp. 3d 384 (E.D. Va. 2023) .............................................8, 14, 17, 18

*Knapp v. Zoetis Inc.*,
   2022 WL 989015 (E.D. Va. March 31, 2022) ....................................26

*Lianyungang FirstDart Tackle Co. v. DSM Dyneema B.V.*,
   871 F. Supp. 2d 482 (E.D.N.C. 2012).........................................................18, 20

*Moody v. Charming Shoppes of Delaware, Inc.*,
   2008 WL 2128955 (N.D. Cal. May 20, 2008) .....................................20

*Noble Security., Inc. v. MIZ Engineering, Ltd.*,
   611 F. Supp. 2d 513 (E.D. Va. 2009) ..........................................................19

*Owens-Corning Fiberglas Corp. v. Watson*,
   413 S.E.2d 630 (Va. 1992)...........................................................................26, 27

*Perdue Foods LLC v. BRF S.A.*,
   814 F.3d 185 (2016).......................................................................................14

*Perkins v. Benguet Consol.*,
   342 U.S. 437 (1952).....................................................................................11, 12

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ..................................................20

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) ..............................................................18

*Schultz v. Komori Corp.*,
    2025 WL 675008 (D. Md. Feb. 28, 2025) ......................................10, 14

*Valley Proteins, Inc. v. Mid-South Steam Boiler and Eng'g Co., Inc.*,
    2017 WL 11507175 (E.D. Va. May 12, 2017) ...................................27

*Virginia Elec. & Power Co. v. Peters*,
    2018 WL 1995523 (E.D. Va. Apr. 27, 2018) ...............................19, 21

*Walden v. Fiore*,
    571 U.S. 277 (2014)..................................................................... *passim*

*Wallace v. Yamaha Motors Corp, U.S.A.*,
    No. 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022)................13, 15, 16

*Zeichner v. Nord Sec. Inc.*,
    2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ......................................19

**Other Authorities**

Fed. R. Civ. P. 12(b)(2)...................................................................7, 27

Fed. R. Civ. P. 12(b)(6)...................................................................7, 27

## I.     INTRODUCTION

This tort case alleges injuries that did not occur in Virginia; involves a product that was not designed, manufactured, assembled, delivered, or sold in Virginia; is brought by an individual who does not reside in Virginia; and names one fraudulently joined defendant and a second defendant that is not incorporated and does not have its principal place of business in Virginia. These allegations support only one possible conclusion—there is no personal jurisdiction.

Plaintiff alleges that she suffered acute and disabling injuries after she was exposed to contaminated fumes while working as a flight attendant on an aircraft that Defendants Airbus Americas, Inc.[1] and Airbus S.A.S. designed, manufactured, and sold. According to Plaintiff, the aircraft's negligent design allows cabin air to become contaminated with toxic chemicals, which she alleges is a known defect with the aircraft's design. But there are no meaningful connections to Virginia in this case that can possibly support the exercise of personal jurisdiction over Airbus S.A.S.

For starters, there is no general jurisdiction over Airbus S.A.S. Because it is incorporated and has its principal place of business in Europe, Airbus S.A.S. is not "essentially at home" in Virginia and not subject to general jurisdiction here. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014). Plaintiff's conclusory allegations that Airbus S.A.S. conducts "substantial" business in the United States, including Virginia, do not come close to establishing this is an "exceptional" case where there is general jurisdiction over a corporation outside its principal place of business or place of incorporation. *Id*. at 139 n.19. Indeed, Airbus S.A.S. does not use Virginia as a temporary substitute for its principal place of business and does not have a relationship to Virginia

---

[1] As explained in the Notice of Removal, Airbus Americas was fraudulently joined and should be dismissed from the action on that basis. Dkt. No. 1, ¶¶ 16-41.

that comes anywhere close to what is required for it to be considered essentially at home in Virginia.

There also is no specific jurisdiction over Airbus S.A.S. in Virginia. To establish specific jurisdiction, Plaintiff must establish that "the defendant's suit-related conduct … create[d] a substantial connection with [Virginia]." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). But none of the hallmark connections required for specific jurisdiction is present. The Plaintiff is from New York, not Virginia, and she was injured in Denver, Colorado, not Virginia, after a flight that did not originate in or even transit over Virginia. Meanwhile, the aircraft at issue, an Airbus A319, was designed, manufactured, and sold by Airbus S.A.S. in Europe and delivered in China, not Virginia, and Airbus S.A.S. never maintained, repaired, serviced, or overhauled the aircraft in Virginia. In short, none of the requirements for specific jurisdiction are present and it would be constitutionally unreasonable to subject Airbus S.A.S., a foreign corporation, to jurisdiction in Virginia for Plaintiff's claims.

Nor is there any basis on which to attribute the contacts of in-state subsidiary Airbus Americas to its parent company Airbus S.A.S. Plaintiff's allegation that marketing material and the corporate website refer to "Airbus" falls far short of what is required to justify jurisdictional veil piercing and, tellingly, Plaintiff never alleges that Airbus Americas was the alter ego or agent of Airbus S.A.S., much less any of the facts required to justify that "exceptional" step.

Finally, and in the alternative, the Court should dismiss for failure to state a claim as to both Airbus S.A.S. and Airbus Americas. The Complaint improperly groups together Airbus S.A.S. and Airbus Americas, referring to them as "Airbus" or "Defendants," making it impossible to determine precisely what each party is alleged to have done. Beyond this failure, the

Complaint's conclusory allegations fail to allege elements of claims for negligence, negligent design, and negligent failure to warn as required under Virginia law.

## II.    RELEVANT BACKGROUND FACTS

### A.    Plaintiff Alleges Tort Claims Arising From Exposure to Aircraft Cabin Fumes

This is a tort action arising from Plaintiff's alleged exposure to contaminated fumes while working as a flight attendant for United Airlines. Plaintiff, a U.S. citizen who resides in New York, alleges that she was exposed to "contaminated air that had a chemical smell" while working on a flight operated by United Airlines from New York City to Denver, Colorado on April 11, 2023. Compl. ¶¶ 31-32, Dkt. No. 1-1. According to Plaintiff, the exposure caused her to experience various short- and long-term health effects, including neurological injuries, severe fatigue, and Sjogren's Syndrome, and she has "problems sleeping, memory loss, trouble concentrating, cognitive defects, emotional distress, depression, anxiety, and can no longer live the normal life she previously enjoyed." *Id*. ¶¶ 51, 53-55. Plaintiff brings claims for negligence, negligent design, and negligent failure to warn. *Id*. at pp. 17-22. Plaintiff names both Airbus Americas and Airbus S.A.S., which she defines collectively as "Defendants" or "Airbus." *Id*. at p. 1.

Plaintiff alleges that the exposure occurred on an Airbus A319 aircraft, tail number N899UA and serial number 3342 ("Subject Aircraft"). *Id*. ¶ 11. The Subject Aircraft and other Airbus commercial aircraft, Plaintiff alleges, allow outside air to enter the cabin after it is "pulled into the airplane's engines first and then bled off into the air system." *Id*. ¶ 19. This air circulation system, "known as a 'bleed air' system, … allows cabin and cockpit air to become contaminated by the byproducts of heated jet engine oil, hydraulic, fluid, and jet fuel that are present in the engine compartment as well as the Auxiliary Power Unit ("APU")." *Id*. This air serves a number

of functions, "including pressurization, air conditioning, engine start, wing and engine ice systems, water pressurization, hydraulic system reservoir pressurization, and boundary layer separation enhancement." *Id.* ¶ 21. According to Plaintiff, the placement of the APU inlet on certain Airbus aircraft makes them more susceptible to "contaminated cabin air events," *id.* ¶ 22; "Defendants" have known that contaminated air events occur and "can cause pilots, flight attendants, and passengers to become ill or incapacitated," *id.* ¶ 27; and "Airbus" failed to implement various measures to prevent contaminated air events, including by failing to develop, install or implement converters, filters, and sensors, *id.* ¶¶ 67-82.

**B.    Plaintiff's Jurisdictional Allegations Do Not Connect Airbus S.A.S. to Virginia**

Plaintiff does not allege that Airbus S.A.S. is incorporated in; has its principal place of business in; or designed, manufactured, assembled, or sold the Subject Aircraft in Virginia. Rather, Plaintiff acknowledges in the Complaint that Airbus S.A.S. is a French corporation with a principal place of business in Toulouse, France. *Id.* ¶ 6. Although she alleges that Airbus S.A.S. "does substantial business" in Virginia, *id.* ¶ 13 and also alleges (incorrectly) that it is "registered to do business in Virginia," *id.* ¶ 10, the Complaint includes only generalized allegations that Airbus S.A.S. has "repeatedly availed itself of the laws of Virginia and the laws of other states in the United States." *Id.* ¶ 14. The Complaint, however, stops short of alleging that Airbus S.A.S. itself established contacts with Virginia. Plaintiff thus alleges "on information and belief" that Airbus S.A.S. "agrees to be subject to the laws of the state of New York in its sales, purchase, and/or lease agreements with airlines such as United Airlines." *Id.* Similarly, Plaintiff alleges that "Defendants" derive "substantial revenue from business in the United States, including Virginia" "[p]ursuant to its purchase agreements with United Airlines, as well as other domestic carriers such as American and JetBlue and the U.S. Government," and that "Defendants purposefully

directed and purposefully conducted activities within the State of Virginia and the United States." *Id*. ¶ 15.   Plaintiff does *not* allege that Airbus S.A.S. design, manufactured, or assembled the Subject Aircraft in Virginia, recognizing instead that "the Subject Aircraft was (1) designed, manufactured, and assembled, in part, by Airbus S.A.S. *in Europe*." *Id*. ¶ 12.

Plaintiff also named Airbus Americas as a defendant and stated that it is incorporated in Delaware and has its principal place of business in Virginia.  *Id*. ¶ 3.   Plaintiff alleges that Airbus Americas is a subsidiary of Airbus S.A.S. but does not allege that the corporate veil between Airbus Americas and Airbus S.A.S. should be pierced or that they are alter egos or that Airbus Americas acted as an agent for Airbus S.A.S.   *Id*. ¶ 6.   Plaintiff instead alleges only that "Defendants have held themselves out publicly as a single entity, operating jointly, and often refer to themselves as 'Airbus' in their advertising, public website, and social media."  *Id*. ¶ 7.   Plaintiff then points to a website link about "Airbus' 'Impact' on the United States," which does not include any discussion specific to Airbus S.A.S. or contacts with Virginia.  *Id*. ¶¶ 8-9.

**C.    Additional Jurisdictional Facts Confirm Airbus S.A.S.'s Lack of Connections to Virginia**

Plaintiff correctly alleges that Airbus S.A.S. is not incorporated and does not have its principal place of business in Virginia.  Compl. ¶ 6.   Rather, it is a European company with its principal place of business in France, and its corporate officers and majority of its workforce are located in Europe.  Ex. A, Supplemental Declaration of Karl K. Hennessee ("Hennessee Decl.") ¶¶ 3, 5.  Airbus S.A.S. has only tenuous connections with Virginia.  Over the past five years, it has not owned any property in Virginia, maintained bank accounts in Virginia, paid taxes in Virginia, or been registered to do business in Virginia.  *Id*. ¶ 9.

Airbus S.A.S. also did not design, manufacture, assemble, certify, or sell the Subject Aircraft in Virginia.  Ex. A, Hennessee Decl. ¶ 12.  Rather, Airbus S.A.S., on its own or through

its European-based subsidiaries or predecessors, performed this work throughout Europe.  *Id.* ¶ 11.

Further, Airbus S.A.S. did not design, manufacture, assemble, or certify the Environmental Control

System ("ECS"), which is the aircraft system that allows bleed air to enter the cabin; the APU; or

engines in Virginia.  *Id.* ¶¶ 12, 26-27.  To the extent any of these components were sourced from

third parties, Airbus S.A.S. developed the specifications and did not source them from suppliers

in Virginia.  *Id.* ¶ 27.  Airbus S.A.S. has also never maintained, repaired, serviced, or overhauled

the Subject Aircraft in Virginia, *id.* ¶ 24, and it was not specifically designed for use in Virginia,

*id.* ¶ 13.  In addition, Airbus S.A.S. is the type certificate holder for the A319 aircraft, the

regulatory authorization the aircraft needs to operate, and as such is responsible for developing the

manuals, service bulletins, and any warnings for the Subject Aircraft.  *Id.* ¶¶ 15-16.  Airbus S.A.S.

has not sold A319 aircraft to customers in Virginia and no operators of A320 family aircraft—

which includes the Airbus A318, A319, A320, and A321, *id.* ¶ 10—are based in Virginia.  *Id.* ¶ 14.

The Subject Aircraft was initially sold in 2007 by AVSA S.A.R.L., a European-based

subsidiary of Airbus S.A.S. to International Finance Lease Corporation ("ILFC"), which leased

the aircraft to China Southern Airlines, and which was also delivered in China.  *Id.* ¶ 21.

Subsequently, ILFC was acquired by AerCap and the Subject Aircraft leased to United Airlines.

*Id.*  The purchase agreement for the Subject Aircraft does not include a Virginia choice-of-law or

forum-selection clause and the Subject Aircraft was not delivered in Virginia.  *Id.* ¶ 22.  Airbus

Americas is not a party to the purchase agreement and was not involved in the Subject Aircraft's

sale to ILFC or its lease by United Airlines.  Ex. B, Declaration of Tiffany Baughman ¶ 15.[2]

---

[2] The Declaration of Tiffany Baughman was filed previously as Exhibit C to the Notice of Removal, Dkt. 1-3, and is being filed again for the convenience of the Court.

Airbus S.A.S has numerous subsidiaries around the world, including Airbus Americas in Virgina. Ex. A, Hennessee Decl. ¶ 6. Until September 2015, Airbus Americas principally operated as a marketing subsidiary for commercial aircraft in the North America market, when it began to perform the final assembly of certain aircraft, but not the A319, in Mobile, Alabama. *Id*.; Ex. B, Baughman Decl. ¶ 11. Airbus Americas did not design, manufacture, assemble, or sell the Subject Aircraft and it also never maintained, serviced, repaired, or overhauled it. *Id*. ¶¶ 11, 15-22. Airbus S.A.S. is the parent company of Airbus Americas, but Airbus Americas is responsible for managing its day-to-day operations, Ex. A, Hennessee Decl. ¶¶ 6-7; has and pays its own employees and corporate officers, and maintains its own human resources, tax, and legal departments. *Id*. ¶ 7; Ex. B, Baughman Decl. ¶¶ 6-7.

## STANDARD OF REVIEW

Once a defendant has raised the propriety of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of proving that personal jurisdiction exists. *See Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). While the plaintiff's burden "varies according to the posture of a case and the evidence that has been presented to the court," *id*. at 268, "a Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter," *id*. at 267.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). Facts that are "merely consistent with" a defendant's liability do not establish a plausible claim to relief. *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The complaint must do more than raise the "mere possibility of misconduct," and so "naked assertions devoid of further factual enhancement" are not enough. *Id*. at 678–79 (quotation marks and brackets omitted).

**LEGAL ANALYSIS**

**III.    Airbus S.A.S. Is Not Subject To Personal Jurisdiction In Virginia**

The Fourteenth Amendment's Due Process Clause prohibits the exercise of jurisdiction over out-of-State defendants unless it has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"[3]  *Ford Motor Co. v. Montana Eight Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)).  This requirement entails focus "on the nature and extent of 'the defendant's relationship to the forum State.'"  *Id.* (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 582 U.S. 255, 262 (2017) ("*Bristol-Myers*").  There are two types of personal jurisdiction:  general, or all-purpose, jurisdiction, and specific, or case-linked, jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011).

Here, there is neither general nor specific jurisdiction.  To the contrary, Airbus S.A.S. is not incorporated or have its principal place of business in Virginia; Airbus S.A.S. did not design, manufacture, assemble, market, or sell the Subject Aircraft in Virginia; and the Plaintiff's injuries did not arise in Virginia.  This is a textbook case for dismissal for lack of personal jurisdiction.

**A.    Airbus S.A.S. is Not Subject to General Jurisdiction in Virginia**

Because general jurisdiction permits claims unrelated to the forum or defendant's contacts in the forum, the Supreme Court has held that this "breadth imposes a correlative limit:  Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction."

---

[3] "'Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause,' the statutory and constitutional questions merge into one inquiry."  *Khashoggi v. NSO Grp. Technologies Ltd.*, 700 F. Supp. 3d 384, 496 (E.D. Va. 2023) (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)).

*Ford*, 592 U.S. at 358 (quoting *Daimler AG*, 571 U.S. at 138). In *Daimler AG*, the Court explained that the question for general jurisdiction is not whether a foreign defendant has "continuous and systematic" contacts with the forum but whether its contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." 571 U.S. at 127 (quotation omitted). For corporations, the Court reasoned, the "paradigmatic jurisdictional forum is the corporation's place of incorporation and principal place of business." *Farrar v. McFarlane Aviation, Inc.*, 823 Fed. Appx. 161, 165 (2020) (citing *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017)).

Focusing general jurisdiction on a corporation's principal place of business and place of incorporation, the Court also rejected the view that corporations are subject to general jurisdiction in every State where they do substantial business. *Daimler AG*, 571 U.S. at 137-39. For example, California did not have general jurisdiction over a German automobile manufacturer or its U.S. subsidiary even though they derived significant revenue from sales of automobiles in California. *Id.*; *see also BNSF Ry.*, 581 U.S. at 414 (railroad that had thousands of miles of railroad track and 2,000 employees in Montana was not subject to general jurisdiction in Montana where it was not the company's principal place of business or place of incorporation).

*Daimler AG* and *BNSF* are dispositive. Plaintiff does not even allege that Airbus S.A.S. is essentially at home in Virginia. Nor could she. Rather, Plaintiff concedes that the dispositive bases for general jurisdiction—principal place of business and place of incorporation—are *not* present for Airbus S.A.S. in Virginia. Compl. ¶ 6. Rather, Airbus S.A.S.'s place of incorporation and principal place of business are both in Europe. *Id.*; Ex. A, Hennessee Decl. ¶ 3. As federal courts have consistently found in similar circumstances, these facts foreclose the exercise of general jurisdiction. *See*, *e.g.*, *Daimler AG*, 571 U.S. at 137-39; *BNSF Ry.*, 581 U.S. at 414.

Plaintiff's allegations that Airbus S.A.S. "does substantial business" in Virginia and that "Defendants derive substantial revenue from business in the United States, including Virginia" are not remotely sufficient to establish general jurisdiction.  Compl. ¶ 15.  First, these are just legal assertions that lack factual foundation and should not be credited.  *See Schultz v. Komori Corp.*, 2025 WL 675008, at *5 (D. Md. Feb. 28, 2025) (noting that "the vague allegation that Komori Corporation has 'do[ne] business in Maryland at all times relevant hereto'" is "conclusory" and " 'not entitled to the presumption of truth'") (quoting *Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 799 (D. Md. 2011); *Andrews v. Shandong Linglong Tyre Co., Ltd.*, 656 F. Supp. 3d 583, 594 (E.D. Va. 2023) ("[A] threadbare allegation" cannot support personal jurisdiction.); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

More significantly, undifferentiated contacts with the United States as a whole do not establish jurisdiction *in Virginia*.  *See, e.g.*, *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011).  The inquiry is not whether Airbus S.A.S. is "essentially at home" in *the United States*.  Plaintiff's burden instead is to allege facts to establish that Airbus S.A.S. is essentially at home *in Virginia*.  *Id.*; *see also Herstal, S.A. v. Sirketi*, 2024 WL 4255343, at *5 (E.D. Va. Sept. 20, 2024) ("That Sarsilmaz might collaborate with SARS USA to create products that target the U.S. market says nothing to suggest that the products were purposefully directed *to Virginia*.") (emphasis in original).  Plaintiff does not even attempt to make this showing as to Airbus S.A.S. and Virginia beyond the conclusory statement about "substantial business."

Moreover, even if the Court were to interpret Plaintiff's allegations about Airbus S.A.S.'s business in the United States as occurring entirely in Virginia, that *still* would not be sufficient to support general jurisdiction.  Again, the Supreme Court's cases establish that corporations are not "essentially at home" everywhere they do business, even if their business is extensive; otherwise,

they would be subject to general jurisdiction everywhere they do business. *See Daimler AG*, 571 U.S. at 137-39; *BNSF Ry.*, 581 U.S. at 414; *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 134-35 (4th Cir. 2020). The *Daimler AG* Court already rejected this view as "unacceptably grasping." *Daimler AG*, 571 U.S. at 138.[4]

Finally, this is not an "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n.19. To the contrary, the Supreme Court has only applied this exception in the extreme circumstance found in *Perkins v. Benguet Consol.*, 342 U.S. 437 (1952), where a Philippine corporation effectively relocated its operations to Ohio due to the Japanese occupation in World War II and was sued in a forum where it maintained its "principal, if temporary, place of business," *Daimler AG*, 571 U.S. at 130 (internal quotation marks omitted). Beyond *Perkins*, the Supreme Court and federal courts have adhered to the view that corporations are not subject to general jurisdiction beyond their principal place of business or place of incorporation. *See*, *e.g.*, *Fidrych*, 952 F.3d at 134; *Farrar v. McFarlane Aviation, Inc.*, 823 Fed. Appx. 161, 165 (4th Cir. 2020) (applying *Daimler AG* and rejecting plaintiff's argument that court should "take a broader approach [to general jurisdiction' than authorized by the Supreme Court").

---

[4] Likewise, the Supreme Court has repeatedly held that "mere purchases" from or sales into a forum State are not sufficient to establish general jurisdiction. *Goodyear Dunlop*, 564 U.S. at 929 (discussing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984)). And while Airbus commercial aircraft fly into and through Virginia, the Supreme Court rejected this sort of normal movement of commerce as a basis to support *general* jurisdiction. *See Goodyear Dunlop*, 564 U.S. at 927 ("Flow of a manufacturer's products into the forum … may bolster an affiliation germane to *specific* jurisdiction. But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant.") (emphases in original; internal citations omitted).

Yet this case is nothing like *Perkins*. Simply put, Airbus S.A.S. does not use Virginia as a temporary substitute for its principal place of business. Instead, the corporate officers for Airbus S.A.S. are all located in Europe, not Virginia, as is the bulk of its workforce. Ex. A, Hennessee Decl. ¶ 5. Over the past five years, Airbus S.A.S. has not owned property in Virginia, been registered to do business in Virginia, maintained bank accounts in Virginia, or had employees based in Virginia. *Id*. ¶ 9. Further, even with tens of billions of dollars in annual sales, Airbus S.A.S. has not sold any A319 to customers in Virginia and no A320 family operators are even based in Virginia.[5] *Id*. ¶ 14. Virginia is thus no more central to Airbus S.A.S. than California or Montana was to Daimler or BNSF, respectively. And as in *Daimler AG* and *BNSF*, Airbus S.A.S. does not have the direct contacts with Virginia needed to support the exercise of general jurisdiction. Airbus S.A.S. thus does not have any of the "limited set of affiliations with [Virginia to] render [it] amenable to all-purpose jurisdiction there." *Daimler AG*, 571 U.S. at 137; *see also Fidrych*, 952 F.3d at 134-35 (rejecting general jurisdiction for Marriott in South Carolina despite possessing "systematic and continuous" contacts that included certificate to conduct business in South Carolina and 90 hotels that it franchised, licensed, or managed).

### B.    Airbus S.A.S. is Not Subject to Specific Jurisdiction in Virginia

Just as Supreme Court precedent forecloses general jurisdiction, it also precludes a finding of specific jurisdiction. In order to show specific jurisdiction, Plaintiff must establish that "'the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Fidrych*, 952 F.3d at 138

---

[5] The globally accessible Airbus website does not permit the purchase of aircraft. Ex. A, Hennessee Decl. ¶ 8. Regardless, even interactive websites are not sufficient to establish general jurisdiction. *See Fidrych*, 952 F.3d at 134.

(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation and internal quotation marks omitted)).

The Supreme Court has emphasized two additional principles that guide the analysis of whether there is specific jurisdiction. First, the forum contacts relevant to specific jurisdiction must be established by the defendant, not some third party. *See Walden*, 571 U.S. at 286. Second, even where the defendant purposefully establishes contacts with the forum, they do not establish specific jurisdiction unless those contacts actually give rise or relate to the plaintiff's claims. *See Bristol-Myers*, 582 U.S. at 264.

The Supreme Court explained this latter principle's application in the product liability context in *Bristol-Myers*. There, nonresidents sued a drug manufacturer in California but they were not prescribed and did not consume the drug in California and the defendant did not design or manufacture the product in California. *Id*. Even though the defendant was already defending claims related to the same product in California and did extensive business in California, the Court found these contacts insufficient to support specific jurisdiction. *Id*. As the Supreme Court explained, when there is no affiliation between the forum the and underlying controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*.

This case is just like *Bristol-Myers*. Like Bristol-Myers, Airbus S.A.S. did not design, manufacture, assemble, or sell the Subject Aircraft in the forum, Ex. A, Hennessee Decl. ¶ 12; Plaintiff does not reside in the forum, Compl. ¶ 1; and Plaintiff's injury did not occur in the forum, *id*. ¶¶ 31-32. Any contacts Airbus S.A.S. has with the forum are necessarily unconnected to Plaintiff's claims and cannot support specific jurisdiction. *See id*.; *see also Wallace v. Yamaha*

*Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *4 (4th Cir. Jan. 6, 2022) (applying *Bristol-Myers*).

Beyond *Bristol-Myers*, the following factors are relevant to determining if there is specific jurisdiction: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (2016). These factors all tip decidedly against finding specific jurisdiction.

### 1.    Airbus S.A.S. did not purposefully direct its activities at Virginia

Plaintiff cannot satisfy the threshold factor for specific jurisdiction: she cannot and does not allege facts to establish that *Airbus S.A.S.* "purposefully directed [its] activities" at Virginia. *Burger King*, 471 U.S. at 472; *see also Walden*, 571 U.S. at 285. Purposeful availment "is not susceptible to a mechanical application," *Khashoggi v. NSO Group. Technologies. Ltd.*, 700 F. Supp. 3d 384, 396 (E.D. Va. 2023), and requires "consider[ing] how the alleged facts apply to the particular circumstances in which, as here, out-of-state defendants have acted outside the forum in a manner that allegedly injures someone residing in the forum," *id*. As previously explained, however, Plaintiff makes only conclusory allegations about *Airbus S.A.S.* engaging in any relevant business *in Virginia*. Compl. ¶ 13. Because these allegations just parrot the legal standard or are not specific to conduct by Airbus S.A.S. in the forum itself, they do not suffice to establish specific jurisdiction. *See Herstal, S.A*, 2024 WL 4255343, at *5; *Andrews*, 656 F. Supp. 3d at 594.

The record confirms that Airbus S.A.S. has not purposefully directed itself at Virginia. "In this case, none of the wrongs [Airbus S.A.S.] is alleged to have committed took place in [Virginia]." *Fidrych*, 952 F.3d at 140; *see also Schultz*, 2025 WL 675008, at *5. The design,

manufacture, assembly, and sale of the Subject Aircraft occurred outside of Virginia and Airbus S.A.S. never maintained, repaired, serviced, or overhauled the Aircraft there, either. Ex. A, Hennessee Decl. ¶¶ 12, 24.

Similarly, Airbus S.A.S. does not perform any of the other incidents associated with doing business in Virginia: it is not registered to do business in Virginia, does not own property in Virginia, and does not have bank accounts or pay taxes in Virginia. *Id*. ¶ 9. In addition, the Subject Aircraft was not tailored for use in Virginia, *id*. ¶ 13, the relevant specifications were not developed in Virginia, *id*. ¶¶ 26-28, and to the extent it was ever operated in Virginia, that would be irrelevant to specific jurisdiction because it would have been entirely due to the unilateral conduct of third parties. *Walden*, 571 U.S. at 291. For these reasons too, even under the effects test, it cannot be said that Airbus S.A.S. "expressly aimed [its] tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 398 n.7 (4th Cir. 2003).

**2. Plaintiff's claims do not arise from or relate to any contacts Airbus S.A.S. established with Virginia.**

Even if Plaintiff could satisfy the purposeful availment prong, she cannot establish that any Airbus S.A.S. contacts with Virginia gave rise to or relate to the claims. "The Supreme Court has made clear that the exercise of specific jurisdiction in a products liability case requires a stronger connection than simply doing business in a state." *Wallace*, 2022 WL 61430, at *4. Here, all the touchpoints relevant to Plaintiff's claims—and, thus, specific jurisdiction—occurred *outside of Virginia*. Plaintiff's injury did not occur in Virginia. Compl. ¶¶ 31-32. Plaintiff does not reside in Virginia. *Id*. ¶ 1. The Subject Aircraft was not designed, manufactured, assembled, certified, or sold in Virginia, Ex. A, Hennessee Decl. ¶¶ 11-12; any relevant manuals, research into cabin fumes, and work on modifications were not prepared or performed in Virginia, *id*. ¶¶ 17-19, and

Airbus S.A.S. has not maintained, repaired, overhauled, or serviced the Subject Aircraft in Virginia, *id*. ¶ 24. In fact, no A319 customers are even located in Virginia. *Id*. ¶ 14.[6]

These facts foreclose specific jurisdiction. "What is needed—and what is missing here— is a connection between the forum and the specific claims at issue." *Bristol-Myers*, 582 U.S. at 265. Under similar circumstances in *Bristol-Myers*, the Supreme Court rejected specific jurisdiction based on the absence of a connection between the forum and specific claims. *Id*. The Court there even emphasized that "the connection between the nonresidents' claims and the forum [wa]s even weaker" than in *Walden*, where the Court rejected specific jurisdiction even though the plaintiff resided and was injured in the forum. *Id*.

The Fourth Circuit similarly affirmed the dismissal for lack of specific jurisdiction in *Wallace*, 2022 WL 61430, at *4-5. Relying on *Bristol-Myers*, the Fourth Circuit explained that "neither the injury … nor Yamaha's conduct related to the product that allegedly caused the injury took place in South Carolina, the forum state." *Id* at *4. In the absence of those connections to the forum, the Fourth Circuit agreed that specific jurisdiction was lacking even though it was undisputed that Yamaha satisfied the purposeful availment requirement and the exercise of jurisdiction was constitutionally reasonable. *Id*.

The court followed the same path in *Fidrych v. Marriott*, rejecting specific jurisdiction even though Marriott had business activity in South Carolina that was "not insignificant." 952 F.3d at 139. Relying again on *Bristol-Myers*, the court explained that Marriott's business activities

---

[6] If the Subject Aircraft has ever been used in Virginia, that use cannot support the exercise of specific jurisdiction because it would have been entirely unrelated to the claims of *this Plaintiff*, who was not injured and does not reside in Virginia. *See Ford Motor*, 582 U.S. at 363 (noting that "this Court has stated that specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State *and the product malfunctions there*") (emphasis added); *Wallace*, 2022 WL 61430, at *4 (rejecting application of *Ford* in case where plaintiff was not injured in forum).

in South Carolina "have nothing to do with the claims asserted by the Plaintiffs in this action. That is, the claims asserted after Bud Fidrych's injury in a Marriott-affiliated hotel in Milan do not in any sense 'arise out of or relate to' Marriott's connects to the hotels located in South Carolina." *Id.*; *see also Farrar*, 823 Fed. Appx. at 164 (applying *Bristol-Myers* and noting that any forum contacts were unrelated to claims and could not support specific jurisdiction).

So too here. Because she cannot establish Airbus S.A.S. had any contacts with Virginia that gave rise to or relate to her claims, Plaintiff cannot carry her burden to establish specific jurisdiction.

### 3. The exercise of personal jurisdiction over Airbus S.A.S. would not be reasonable.

Given the tenuous connection between Plaintiff's claims, Airbus S.A.S.'s conduct, and the forum, any exercise of personal jurisdiction over Airbus S.A.S. in Virginia would be constitutionally unreasonable. *See Khashoggi*, 700 F. Supp. 3d at 400 (noting that "[t]he more attenuated the contacts with the forum state, the less a defendant must show in terms of unreasonableness to defeat the court's exercise of jurisdiction"). In assessing the reasonableness of exercising personal jurisdiction, the Fourth Circuit considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 217 (4th Cir. 2001) (quoting *Burger King*, 471 U.S. at 477).

These factors all weigh against the exercise of personal jurisdiction. As a foreign company with its principal place of business in Europe, it would be burdensome for Airbus S.A.S. to have to defend Plaintiff's claims in a forum that is entirely unrelated to any contacts it may have with

Virginia.  *See Khashoggi*, 700 F. Supp. 3d at 400 (weighing factor against exercise of personal jurisdiction over Israeli company).  This is especially so considering that the evidence will likely be entirely in Europe, for Airbus S.A.S., or in New York, where Plaintiff resides.  *Id.* at 400-01. And given that the Plaintiff is neither from Virginia nor injured in Virginia, and the Subject Aircraft was not designed, manufactured, assembled, or sold in Virginia, the forum's interest in adjudicating the controversy is minimal, at best.  For similar reasons, Plaintiff's interest in obtaining convenient and effective relief also weighs against jurisdiction in Virginia.  Finally, the interests of the interstate judicial system and shared interests of the States do not support jurisdiction in Virginia when there are other fora that have at least some contacts to Plaintiff's claims and would have a stronger claim to adjudicate this action.  "The United States Supreme Court has also cautioned against extending state long arm statutes in an international context." *Khashoggi*, 700 F. Supp. 3d at 401 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1987)); *cf. Daimler AG*, 471 U.S. at 763 (noting risks to "international comity" from exercise of jurisdiction over foreign automobile manufacturer).

### C.    Plaintiff Cannot Attribute the Forum Contacts of Airbus Americas to Airbus S.A.S.

Finally, for several reasons, Plaintiff cannot establish personal jurisdiction over Airbus S.A.S. based on the contacts of its in-state subsidiary, Airbus Americas.

First, Plaintiff stops short of actually alleging that Airbus S.A.S. is subject to personal jurisdiction based on Airbus Americas' presence in Virginia.  *See* Compl. ¶¶ 13-17.  This is unsurprising.  "[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276-77 (4th Cir. 2005); *see also Lianyungang FirstDart Tackle Co. v. DSM Dyneema B.V.*, 871 F. Supp. 2d 482, 488 (E.D.N.C. 2012) (collecting cases).  Under Virginia law, which applies as law of the

forum, *see Virginia Elec. & Power Co. v. Peters*, 2018 WL 1995523, at *2 n.4 (E.D. Va. Apr. 27, 2018). Jurisdictional veil piercing is only permissible if the parent and subsidiary are alter egos, *id*. at *2, or if the subsidiary acted as the parent's agent, *Noble Security., Inc. v. MIZ Engineering, Ltd.*, 611 F. Supp. 2d 513, 534 (E.D. Va. 2009). Plaintiff's failure to actually allege that Airbus S.A.S. and Airbus Americas are alter egos or had an agency relationship should be dispositive.

Second, Plaintiff's allegations that Airbus S.A.S. and Airbus Americas hold "themselves out publicly as a single entity, operating jointly and refer to themselves as 'Airbus' in their advertising, public, website, and social media," Compl. ¶ 7, falls far short of establishing that jurisdictional veil piercing is appropriate. "Piercing the corporate veil is an 'extraordinary act' permitted only when 'necessary to promote justice,'" *Virginia Elec. & Power*, 2018 WL 1995523, at *2 (quoting *C.F. Trust, Inc. v. First Flight L.P.*, 580 S.E.2d 806, 809 (Va. 2003)), and applies when there is a unity of interest and the corporation is used to avoid an obligation, perpetrate a fraud or crime, to commit an injustice, or to gain an unfair advantage, *id*. The "critical test" in determining whether there is an agency is "the nature and extent of control exercised by the purported principal over the agent." *Noble Sec.*, 611 F. Supp. 2d at 534.

Plaintiff alleges none of the facts necessary to satisfy the alter ego or agency requirements. That should be dispositive. And other than purely conclusory and speculative assertions, which do not suffice, *see Herstal*, 2024 WL 4255343, at *4, Plaintiff relies entirely on allegations about marketing references to "Airbus" to suggest that Airbus Americas and Airbus S.A.S. hold themselves out as operating jointly. Compl. ¶ 7. But federal courts have consistently recognized that shared websites, marketing references, and representations about a "single '[corporate]' entity made online do not establish the requisite unity of interest for an alter ego theory." *Zeichner v. Nord Sec. Inc.*, 2024 WL 4951261, at *3 (N.D. Cal. Dec. 2, 2024) (collecting cases); *see also*

*Lianyungang FirstDart Tackle*, 871 F. Supp. 2d at 488 (noting that "corporate entities that are merely 'related,' such as sister corporations or parents of subsidiaries, are not automatically subject to personal jurisdiction in the forum state of the 'related' entity"); *Alexander v. Bayerische Motoren Werke AG*, 2020 WL 2098108, at *5-6 (D.S.C. May 1, 2020) (use of term "BMW Group" does not establish alter ego or agency by parent for personal jurisdiction); *Moody v. Charming Shoppes of Delaware, Inc.*, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [company's] website … simply do[es] not rise to the day-to-day control required to impute the subsidiary's contacts to the parent"). As one court explained, "separate corporate entities presenting themselves 'as one online does not rise to the level of unity of interest required to show companies are alter egos.'" *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1006-07 (N.D. Cal. 2020) (quoting *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016)). Indeed, none of this would establish an alter ego relationship, much less the use of corporate form to avoid an obligation, perpetrate a fraud or crime, to commit an injustice, or to gain an unfair advantage, or that Airbus Americas was controlled in any relevant way.

Third, nor could Plaintiff allege facts to support jurisdictional veil piercing between Airbus S.A.S. and Airbus Americas. The two are separately incorporated companies; Airbus S.A.S. does not manage the day-to-day operations of Airbus Americas; and Airbus Americas has its own corporate officers, bank accounts, and human resources, tax, and legal departments. Ex. A, Hennessee Decl. ¶¶ 6-7; Ex. B, Baughman Decl. ¶¶ 6-7. Further, because Airbus Americas played no role in the design, manufacture, assembly, or sale of the Subject Aircraft, was not responsible for developing or issuing warnings, and was never directed to work on solutions related to cabin fumes, Ex. A, Hennessee Decl. ¶¶ 15-16, 18-19, Airbus Americas could not have acted as the agent

for Airbus S.A.S. in any sense relevant to Plaintiff's claims. Ex. B, Baughman Decl. ¶¶ 10-11, 15.22.

There also is no sense in which it would be necessary to pierce the corporate veil in order to promote justice. *Virginia Elec. & Power*, 2018 WL 1995523, at *2. And to the extent Airbus Americas provides "important" services to Airbus S.A.S., that is an inadequate basis on which to base an agency relationship that could support jurisdiction since it would "subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' [the Supreme Court] rejected in *Goodyear*." *Daimler AG*, 571 U.S. at 760.

**IV.    The Complaint Should Be Dismissed in the Alternative for Failure to State a Claim**

**A.    Plaintiff Fails to Plead Any Claims**

Plaintiff has not adequately alleged *any* claims as to Airbus Americas or Airbus S.A.S., because she has pleaded in a purely general manner. Where a Plaintiff fails "to differentiate or clearly identify" which defendant "played a particular role in the manufacture or sale" of a product in a products liability claim, such "omnibus allegations" "require[e] a reviewing court to 'parse each claim to determine whether the undifferentiated allegations, if true, plausibly state a claim." *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 503 n.4 (E.D. Va. 2013) (quoting *Alliance Tech. Grp., LLC v. Achieve 1, LLC*, 2013 WL 143500, at *3 (E.D. Va. Jan. 11, 2013)). But "[a] plaintiff must identify, with particularity, each individual defendant's culpable conduct; defendants cannot be grouped together without specification of which defendant committed which wrong." *Id.* (quoting *Arnlund v. Smith,* 210 F.Supp.2d 755, 760 (E.D. Va.2002)) (alterations in original). "Absent such [differentiated] allegations," the Court should dismiss the claims. *Id.* at 503.

Here, however, Plaintiff directs all of her allegations at "Defendants" or "Airbus," which she groups together to include both Airbus Americas and Airbus S.A.S. *See* Compl. at ¶ 7. To

take just two examples, Plaintiff alleges that "Defendants have known about contaminated cabin air events for decades," *id*. ¶ 27, and that "Airbus misrepresented the safety of its Aircraft," *id*. ¶ 88. But by grouping together Airbus Americas and Airbus S.A.S., the Complaint fails to specify "which defendant committed which wrong." *Ball*, 693 F. Supp. 2d at 503 n.4.

### B. Plaintiff Fails to State Negligence Claims Based on Design Defect

Plaintiff alleges claims for negligence and negligent design, both of which are premised on alleged defects in the design of the Subject Aircraft. "Virginia has not adopted a strict liability regime for products liability," *Evans v. Nacco Materials Handling Grp.*, 810 S.E.2d 462, 469 (Va. 2018), but does permit a plaintiff who alleges that "a product suffered from a design defect" to "proceed under … a theory of negligence." *Id.*[7]

"With respect to designing products, the law imposes on a manufacturer 'a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended." *Evans*, 810 S.E.2d at 469 (quoting *Turner v. Manning, Maxwell & Moore, Inc.*, 217 S.E.2d 863, 868 (Va. 1975)). "The manufacturer is not an insurer and is not required to design and market an accident-proof product." *Dorman v. State Indus., Inc.*, 787 S.E.2d 132, 139 (Va. 2016).

To recover under a products liability claim of negligence under Virginia law, Plaintiff must show that "(1) the [product] was unreasonably dangerous for the use to which it would ordinarily be put or for some other reasonably foreseeable purpose, [and] (2) the unreasonably dangerous condition existed when the [product] left the defendant's hands." *Ball*, 963 F. Supp. 2d at 505(quoting *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 968-69 (4th Cir. 1971)). "A product is unreasonably dangerous if it is defective in assembly or manufacture, unreasonably dangerous

---

[7] Given that, under Virginia law, products liability sounds in negligence rather than strict liability, this motion analyzes Plaintiff's negligence and negligent design theories together.

in design, or unaccompanied by adequate warnings concerning its hazardous properties." *Evans*, 810 S.E.2d at 472 (quoting *Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996)). "To sustain a claim for negligent design, a plaintiff must show that the manufacturer failed to meet objective safety standards prevailing at the time the product was made." *Id.* (quoting *Holiday Motor Corp. v. Walters*, 790 S.E.2d 447, 455 n.14 (Va. 2016)). "To state a claim of negligent design, Plaintiff must contend that Defendant could have designed the product differently before putting it into the stream of commerce, 'or that such a design is even feasible.'" *Dodson v. C.R. Bard, Inc.*, 2020 WL 7647631, *5 (E.D. Va. Dec. 23, 2020) (quoting *Ball*, 963 F. Supp. 2d at 505).

Plaintiff fails to properly allege essential elements of negligence claims based on design defects.

### 1. The Complaint does not sufficiently allege an unreasonably dangerous product design.

Without showing that a product failed to meet government regulations, industry norms or practices, or consumer expectations, a plaintiff cannot establish, as a matter of law, that a product is unreasonably dangerous. *See Evans*, 810 S.E.2d at 470-72. But Plaintiffs have utterly failed to allege that Defendants failed on any of these fronts. The Complaint does not allege that the Subject Aircraft failed to meet any FAA or other governmental standards, nor does it allege that the Subject Aircraft failed to meet industry standards. In fact, the Complaint indicates that Airbus aircraft conform with those standards, given that many of the Complaint's allegations concern the aircraft industry's failure to implement the supposed alternative designs it purports to propose. *See, e.g.*, Compl. ¶ 19 ("The facts of this case highlight a previously hidden and 'dirty little secret' *of the airline industry*.") (emphasis added).

The Complaint also fails to allege that the Subject Aircraft failed to meet "reasonable consumer expectations." *Evans*, 810 S.E.2d at 470. Such expectations "may be shown by direct evidence of what reasonable consumers considered defective as well as published literature or industry practices recognizing a safety standard that reasonable consumers expected." *Id.* (citing *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993). But the Complaint fails to point to any such reasonable consumer expectations or any industry practices. And insofar as the Complaint lays out generalized complaints about the aircraft industry's use of "bleed air," it is self-defeating in this regard.

### 2. The Complaint does not sufficiently allege an alternative feasible design.

"Even where a plaintiff can prove that reasonable consumers expected a safer design, . . . a design is not objectively unreasonable unless the plaintiff can show that an alternative design is safer overall than the design used by the manufacturer." *Evans*, 810 S.E.2d at 471. Virginia law establishes "the time the product left the manufacturer's hands"—not the date of an alleged incident—as the relevant time for evidence of whether a product is unreasonably dangerous. *Id.* Causation is a necessary element of a products liability claim under Virginia law. *See Fields v. Jobar Intern., Inc.*, 2014 WL 1513289, *3 (E.D. Va. April 16, 2014) ("[T]he plaintiff must establish that the defect existed when it left the defendant's hands at that the defect actually caused the plaintiff's injury.") (quoting *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993)). Accordingly, in order to allege a cause of action, Plaintiff must plead facts sufficient to show that each defendant knew, at the time of manufacture, both the likelihood of harm *and* the existence and feasibility of a safer design, as well as that the alleged defect was a cause of the Plaintiff's injury.

First, the Complaint does not allege any feasible alternative designs beyond generalities, failing to identify the specifics of those designs or how such designs would have prevented Plaintiff's alleged injuries. Plaintiff alleges that Defendants failed "to develop, install, or implement [Combined Hydrocarbon Ozone Converters], which could remove or significantly reduce airborne toxins," but she does not allege which "airborne toxins" would be "remove[d] or significantly reduce[d]" or, indeed, that any of those alleged "toxins" injured her, or that such a "significant reduc[tion]" would have prevented her alleged injury. *See* Compl. ¶¶ 67-69. Similarly, she alleges that Defendants failed to "Implement and Mandate Combination Recirculation System Filters" "that can remove both biologics and viruses as well as Volatile Organic Compound contaminants," but she fails to allege which "biologics," "viruses," or "Volatile Organic Compound contaminants" caused her injuries, let alone that such a filter would have prevented those injuries. *See Id*. ¶ 70. Nor does the Complaint's allegation that Defendants "Fail[ed] to Implement Sensors" specify which chemical "toxins" such sensors would detect, how such sensors would function, or that any sensor could have prevented Plaintiff's alleged injury. *See Id*. ¶¶ 71-82.

The closest Plaintiff comes to alleging a feasible alternative design is to claim that "rather than configure the APU inlet [on the Subject Aircraft model] so that the APU is attached to the air circulation system using a single, continuous duct" the Subject Aircraft uses "a series of ducts that are connected by various seals" that somehow allow oil to "pass through these seals and into the APU inlet duct." Compl. ¶ 23. But the Complaint contains no information on how such a "single, continuous duct" would prevent oil ingress *by eliminating seals* (the things that prevent oil ingress in the first place).

Moreover, Plaintiff does not allege any facts showing that, at the time of manufacture, a feasible alternative design even existed or that the aircraft's design failed to comply with the then-state of the art. *See Knapp v. Zoetis Inc.*, 2022 WL 989015, *5 (E.D. Va. March 31, 2022) ("[A] plaintiff must state facts showing that 'an alternative design is safer overall than the design used by the manufacturer.'") (quoting *Evans*, 810 S.E.2d at 471). Plaintiffs provide no information whatsoever related to the dates of manufacture of the allegedly defective aircraft and what designs were then available. Threadbare allegations that a supposedly superior design became available at some point will not suffice to state a claim for relief. *Iqbal,* 556 U.S. at 678; *see also Ball*, 963 F. Supp. 2d at 505 (E.D. Va. 2013) ("A bare allegation of a 'defect' is no more than a legal conclusion.") (collecting cases).

Finally, Plaintiff has not alleged how the supposed defect in the Subject Aircraft's design caused her injury. While alluding to various "toxins" throughout the complaint, Plaintiff never alleges which, if any, of those supposed contaminants caused any of her injuries. Without such an allegation, "[i]t is impossible for [the] Court to determine whether or not Plaintiff states a plausible claim for negligent design." *Fields*, 2014 WL 1513289, * 3 (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)).

### C.    The Complaint Fails to State a Failure to Warn Claim

Plaintiff's negligent failure to warn claim also fails. "The manufacturer of a chattel will be subject to liability when [it] (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 634 (Va. 1992) (quoting *Featherall v. Firestone Tire & Rubber Co.*, 252 S.E.2d 358, 366 (Va. 1979)). In Virginia "the appropriate

standard . . . is whether a manufacturer has *a reason to know*, not whether the manufacturer *should know*. *Id.* at 635 (emphasis in original). This is a "stricter" standard than the "should know" alternative. *Valley Proteins, Inc. v. Mid-South Steam Boiler and Eng'g Co., Inc.*, 2017 WL 11507175, *3 (E.D. Va. May 12, 2017) (quoting *Owens-Corning*, 243 Va. 128, 134-36).

Plaintiff has alleged generally that Defendants "knew (or should have known) that contaminated cabin air events do occur in all aircraft utilizing bleed air systems," and that such defects "can cause serious danger to the health and welfare of crew members and passengers." Compl. ¶ 59. But the Complaint does not identify how Defendants knew this, and any allegation that Defendants "should have known" is irrelevant under Virginia law. *See Owens-Corning*, 413 S.E.2d at 635. The Complaint claims that "Airbus knows" that "contaminated air events occur every day, and these events present potential safety issues," Compl. ¶ 64, but it alleges no facts to support such a claim. Plaintiff points to no studies, no governmental research, no industry research, no industry reports, no scientific studies, and indeed *no reporting of any kind* beyond the base allegation that Airbus "knew (or should have known)" that contamination of cabin bleed air causes injury to anyone and that, in 2009 "investigative reporters secretly took wipe samples from inside a number of airplanes" that showed "positive" results for TCP. *Id.* ¶ 66. But even that allegation fails to state whether any of the purportedly sampled aircraft was of the same model as the Subject Aircraft or whether any was manufactured by Defendants. *Id.* Such threadbare allegations and conclusory statements simply do not pass muster. *Iqbal,* 556 U.S. at 678.

### V.    Conclusion

For the foregoing reasons, the Court should grant the motion to dismiss Airbus S.A.S. for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and in the alternative dismiss for failure to state a claim as to both Airbus S.A.S. and Airbus Americas pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 7, 2025

Respectfully submitted,

/s/ Ian S. Hoffman
Ian S. Hoffman, VSB No. 75002
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
Telephone: (202) 942-6406
Facsimile: (202) 942-5999
Ian.Hoffman@arnoldporter.com

Christopher M. Odell
(*pro hac vice* application forthcoming)
700 Louisiana Street, Suite 4000
Houston, TX 77002-2755
Telephone: (713) 576-2400
Fax: (713) 576-2499

*Counsel for Defendants Airbus Americas, Inc.*
*and Airbus S.A.S.*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 7th day of May 2025, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.  I hereby also certify that on this the 7th day of May 2025, I sent a copy of the foregoing to all counsel of record via email.

Dated: May 7, 2025                    Respectfully submitted,

                                      /s/ Ian S. Hoffman
                                      Ian S. Hoffman, VSB No. 75002
                                      ARNOLD & PORTER KAYE SCHOLER LLP
                                      601 Massachusetts Ave., N.W.
                                      Washington, DC 20001
                                      Telephone: (202) 942-6406
                                      Facsimile: (202) 942-5999
                                      Ian.Hoffman@arnoldporter.com

                                      Christopher M. Odell
                                      (*pro hac vice* application forthcoming)
                                      700 Louisiana Street, Suite 4000
                                      Houston, TX 77002-2755
                                      Telephone: (713) 576-2400
                                      Fax: (713) 576-2499

                                      *Counsel for Defendants Airbus Americas, Inc.
                                      and Airbus S.A.S.*